IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MAGALLY MERCADO-ACOSTA,<br><br>Plaintiff<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant | CIV. NO.: 19-2018 (SCC) |

**OPINION & ORDER**

Plaintiff Magally Mercado-Acosta ("Plaintiff") filed this suit seeking to vacate the Commissioner of Social Security's (the "Commissioner") decision denying her disability benefits. Docket No. 1. The Government answered the complaint, arguing that the Commissioner's decision should be affirmed, as it was supported by substantial evidence. Docket No. 8 at 3. Plaintiff later filed a memorandum of law to support her position that the Commissioner's decision should be vacated. Docket No. 17. The Government also filed

a memorandum of law responding to Plaintiff's arguments. Docket No. 20. After reviewing the record and the parties' memoranda, we affirm the Commissioner's decision.

## I. Standard of review

Under the Social Security Act (the "Act"), a person is disabled if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d). The Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Thus, the Commissioner's decision must be upheld if we determine that substantial evidence supports the Administrative Law

Judge's ("ALJ") findings, even if we would have reached a different conclusion had we reviewed the evidence *de novo*. *Lizotte v. Sec'y of Health & Human Servs.*, 654 F.2d 127, 128 (1st Cir. 1981).

The scope of our review is limited. We are tasked with determining whether the ALJ employed the proper legal standards and found facts upon the proper quantum of evidence. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (citing *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996)). The ALJ's decision must be reversed if its decision was derived "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Id*. In reviewing a denial of benefits, the ALJ must consider all the evidence in the record. 20 C.F.R. § 404.1520(a)(3).

The Act sets forth a five-step inquiry to determine whether a person is disabled. *See id.* at § 404.1520(a)(4). The steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id.* Step one asks whether the plaintiff is currently "doing substantial gainful

activity." *Id.* at § 404.1520(a)(4)(i). If he is, he is not disabled under the Act. *Id.* Step two determines whether the plaintiff has a physical or mental impairment, or combination of impairments, that is severe and meets the Act's duration requirements. *Id.* at § 404.1520(a)(4)(ii). The plaintiff bears the burden of proof as to the first two steps. Step three considers the medical severity of the plaintiff's impairments. *Id.* at § 404.1520(a)(4)(iii). If, at this step, the plaintiff is determined to have an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P., app. 1, and meets the duration requirements, he is disabled. *Id.* at § 404.1520(a)(4)(iii).

If the plaintiff is not determined to be disabled at step three, his residual functional capacity ("RFC") is assessed. *Id.* at § 404.1520(a)(4), (e). Once the RFC is determined, the inquiry proceeds to step four, which compares the plaintiff's RFC to his past relevant work. *Id.* at § 404.1520(a)(4)(iv). If the plaintiff can still do his past relevant work, he is not disabled. *Id.* Finally, at step five, the plaintiff's RFC is considered alongside his "age, education, and work experience to see if

| | |
|---|---|
| MAGALLY MERCADO ACOSTA v.<br>COMMISSIONER OF SOCIAL SECURITY | Page 5 |

[he] can make an adjustment to other work." *Id.* at § 404.1520(a)(4)(v). If the plaintiff can adjust to other work, he is not disabled; if he cannot, he is disabled. *Id.*

## II.   Background

Plaintiff made an initial application for disability benefits on September 24, 2015, alleging that her disability began on January 1, 2015. Tr. 74.[1] Her application was initially denied, as was the reconsideration, and she consequently requested an Administrative Law Judge ("ALJ") hearing. *Id.* The hearing was held on October 26, 2018. *Id.* The ALJ found that Plaintiff had severe impairments including lumbar radiculopathy, bilateral carpal tunnel syndrome, osteoarthritis, asthma, and major depressive disorder with psychotic features. Tr. 76. In the determination of Plaintiff's RFC, the ALJ concluded that she could perform "light work" under 20 C.F.R. § 404.1567(b) except that she could lift, carry,

---

[1] Throughout this Opinion & Order, the Social Security record Transcript will be referred to as Tr.

push and pull twenty pounds occasionally and ten pounds frequently. Tr. 79. The ALJ also determined that she could frequently sit, stand, and walk for six hours; handle, finger, and feel items frequently with bilateral hands; climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; balance frequently, stoop, kneel, and crouch occasionally but never crawl; never work at unprotected heights; work moving mechanical parts and operate a motor vehicle occasionally. *Id.*

As for the work environment, the ALJ concluded that Plaintiff could be exposed to occasional humidity, wetness, dust, odors, fumes, and pulmonary irritants, as well as extreme cold and heat. *Id.* The ALJ's decision also found that Plaintiff could perform simple routine tasks and make simple work-related decisions. *Id.* In addition, Plaintiff could frequently interact with supervisors and coworkers and occasionally with the public. *Id.* According to the ALJ, Plaintiff could not perform her past relevant work. Tr. 83. However, at step five it found that she could perform other

MAGALLY MERCADO ACOSTA v.  Page 7
COMMISSIONER OF SOCIAL SECURITY

jobs that existed in significant numbers in the national economy. *Id.*

Plaintiff appealed the ALJ's decision with the Social Security Administration ("SSA") Appeals Council ("Appeals Council") and received an unfavorable decision. Tr. 1-3. Subsequently, Plaintiff filed this case under 42 U.S.C. § 405(g), seeking to review the ALJ's decision. Docket No. 1.

### III. Analysis

On appeal, Plaintiff raises three issues with the ALJ's decision: first, that the ALJ did not give the appropriate weight to the opinions of physicians and chose instead to rely on its own interpretation of raw medical data, Docket No. 17 at 14-22; second, that the ALJ did not adequately analyze or consider her diagnosis of Fibromyalgia, *id.* at 22-28; and third, that the ALJ erred by posing an insufficient question to the vocational expert, *id.* at 28. We address each issue in turn.

*1. ALJ's assessment of the medical opinions*

Plaintiff first argues that the ALJ relied excessively on its own layperson opinion and that it did not provide an

| MAGALLY MERCADO ACOSTA v. | Page 8 |
| COMMISSIONER OF SOCIAL SECURITY | |

adequate explanation for ignoring or giving the proper weight to the medical opinions on the record. *Id.* at 22. We disagree.

To be clear, the idea that an ALJ always needs the opinion of a "super-evaluator" - a single reviewing physician - to determine a claimant's RFC is not supported by the social security "statutory scheme, by the caselaw, or by common sense." *Evangelista v. Sec'y of Health and Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987). The regulations mandate that it is the ALJ's responsibility to determine a claimant's RFC. 20 C.F.R. § 404.1546(c). The ALJ makes this determination by using all relevant medical and non-medical evidence on the record. 20 C.F.R. § 404.1545(a)(3). The ALJ considers medical opinions to assess a claimant's RFC, but it nonetheless has the final responsibility in deciding a claimant's RFC. 20 C.F.R. § 404.1527(d)(2). In this assessment, the ALJ is permitted "'to piece together the relevant medical facts from the findings and opinions of multiple physicians.'" *Krol v. Berryhill*, Civil Action No. 15-13533-GAO, 2017 WL 1196644, at *3 (D. Mass.

March 29, 2017) (quoting *Evangelista*, 826 F.2d at 144).

Although the ALJ may tether the evidence together and make an RFC determination, it is not qualified to interpret raw medical data in functional terms. *Pérez v. Sec'y of Health and Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991). The previous rule was established in *Berrios v. Sec'y of Health and Human Servs.*, 796 F.2d 574, 576 (1st Cir. 1986). *See Langley v. Astrue*, 777 F. Supp.2d 1250, 1253 (N.D. Al. 2011). The First Circuit has developed the *Berrios* rule to mean that the ALJ, a layperson, cannot interpret raw and complex medical data without the opinion of a medical expert. *Id.* at 1256. For example, in *Manso-Pizarro*, the First Circuit held that the ALJ erred by not securing a medical opinion to determine a claimant's RFC where the medical evidence was complex and required more than a layperson's effort at a commonsense functional capacity assessment. 76 F.3d at 20. That is not the case here. The ALJ considered the opinions of six experts to determine Plaintiff's RFC. Tr. 83. The ALJ acted within its boundaries by discussing and piecing together all of the

expert's opinions on the record to establish Plaintiff's RFC. *See Krol v. Berryhill*, 2017 WL 1196644, at *3. Hence, Plaintiff argument that the ALJ relied excessively on its opinion to determine Plaintiff's RFC is incorrect.

Plaintiff also argues that the ALJ failed to properly consider the opinions of Dr. Torres-Santiago, Dr. Suárez-Canabal, Dr. Alcover, and Dr. González. Docket No. 17 at 18-19. First, she states that the ALJ failed to include in its discussion that Dr. Torres-Santiago's main diagnostic impression was that Plaintiff "was unable to do regular work." *Id.* at 18 (citing Tr. 957). However, The ALJ acted adequately in not giving special significance to Dr. Torres-Santiago's opinion. Social Security regulation 20 C.F.R. § 404.1527(d)(3) states that the Commissioner will not give special consideration to medical source opinions on issues reserved to the Commissioner, including medical opinions saying that a claimant is disabled.

She next claims that the ALJ failed to mention in its RFC determination opinion of Dr. Suárez-Canabal on her

fibromyalgia and rheumatoid arthritis conditions. Docket No. 17 at 18-19. However, the ALJ did not include Dr. Suárez-Canabal's opinions and treatment notes as part of its RFC determination because it previously concluded that the records regarding the fibromyalgia diagnosis did not include a functional limitation assessment or state that plaintiff was limited in anyway by the condition. *See* Tr. 76.

Plaintiff also argues that the ALJ failed to weigh Dr. Alcover's opinion properly. *See* Docket No. 17 at 19. In its decision, the ALJ granted Dr. Alcover's opinion little weight, as the opinion did not provide a function-by-function assessment. Tr. 83. Plaintiff disagrees by pointing out that the ALJ did not consider Dr. Alcover's prognosis, which allegedly provides a functionality assessment. Docket No. 17 at 19. In short, Dr. Alcover's prognosis states that Plaintiff has not managed to reach remission of her depressive symptoms; thus, her level of functioning continues to be significantly

| MAGALLY MERCADO ACOSTA v. COMMISSIONER OF SOCIAL SECURITY | Page 12 |
|---|---|

altered.[2] Tr. 324. Despite Plaintiff's claim, Nothing in Dr. Alcover's prognosis includes a functional assessment of Plaintiff's capacity to work. *See* Tr. 320-324. Also, nothing in Dr. Alcover's evaluation supports a finding that Plaintiff is disabled. *See id.*

Lastly, Plaintiff argues that the ALJ did not give proper weight to Dr. González's medical opinion, which states that she "could only perform limited or less than sedentary work, while also [needing] unscheduled breaks and being absent more than [four] times a month . . . ." Docket No. 17 at 20. Under 20 C.F.R. § 416.927(c)(2), the ALJ is required to give Dr. González's opinion controlling weight since it is her treating

---

[2] Dr. Alcover's prognosis states that:

> Based on the history stated by the claimant, it is identified that although she complies with her psychiatric treatment, Magally, has not managed to reach a remission of her depressive symptoms. For this reason, at the moment, her level of functioning continues to be significantly altered, this suggests that her condition is of a chronic nature.

Tr. 324.

| MAGALLY MERCADO ACOSTA v. COMMISSIONER OF SOCIAL SECURITY | Page 13 |
|---|---|

physician. However, Section 416.927(c)(2) requires that, to give controlling weight to a treating physician's opinion, the opinion must be consistent with the rest of the substantial evidence in the record. *Id.* Here, it is apparent from the ALJ's decision that the ALJ granted Dr. González's opinion little weight because it was inconsistent with the rest of the record. *See* Tr. 83. This interpretation is supported by the fact that, after affording Dr. González's opinion little weight, the ALJ's decision specifically notes that the evidence in the record supported a finding that Plaintiff could perform light work with other limitations. *Id.*

   2. *Fibromyalgia diagnosis*

Plaintiff's next argument is that the ALJ failed to consider her diagnosis of fibromyalgia properly. Docket No. 17 at 22. The ALJ determined at step two of the sequential process that Plaintiff's fibromyalgia diagnosis was not severe. Tr. 76. Its decision rest on the fact that the record did not prove that Plaintiff experienced functional limitations associated with fibromyalgia and that no medical source limited Plaintiff

concerning the same. *Id.* Plaintiff contends that the ALJ erred by "determining that the [fibromyalgia] diagnosis was non severe and by deviating from the correct legal standards by ignoring the Fibromyalgia analysis at the different steps of the sequential evaluation." Docket No. 17 at 27.

First, the ALJ did not err in finding that Plaintiff's fibromyalgia diagnosis was not severe. The reason is that Dr. González's medical record only reveals a diagnosis of fibromyalgia. Tr. 495. Dr. Gonzalez's treatment note does not establish that Plaintiff experiences functional limitations due to fibromyalgia. *See id.* Nor does Dr. Suárez-Canabal's medical record show Plaintiff's fibromyalgia functional limitations. Like Dr. González, Dr. Suárez-Canabal's medical record provides a diagnosis of fibromyalgia. Tr. 1273-1275. However, Dr. Suárez-Canabal does add that Plaintiff has a history of widespread pain in all quadrants and has at least eleven tender points. Tr. 1302. But this statement does not establish that Plaintiff has functional limitation due to fibromyalgia. Accordingly, there is no objective medical

evidence to establish Plaintiff's fibromyalgia limitations.

Second, the ALJ assessed Plaintiff's fibromyalgia diagnosis at the subsequent steps of the sequential evaluation. At the RFC determination, the ALJ followed the two-step process to evaluate symptoms. The process first requires that the ALJ assess the existence of an underlying medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain. 20 C.F.R. § 404.1529. In the second step, the ALJ is required to evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. *Id.*

In making this determination, the ALJ considered Plaintiff's claims that she was disabled due to fibromyalgia, cervical disc disease, lumbar disc disease, lumbar radiculopathy, bilateral carpal tunnel syndrome with right release, major depressive disorder, osteoarthritis and impingement syndrome of bilateral shoulders. Tr. 79. The ALJ also considered Plaintiff's testimony regarding her subjective

claims of pain. *Id.* Specifically, she complained of generalized pain and pain in the lower back radiating to the left leg, joints, left knee, right shoulder. *Id.* At the second step, the ALJ found that her medically determinable impairments could reasonably cause the alleged symptoms, but did not support her statements concerning the intensity, persistence, and limiting effects of these symptoms, as the effects of the symptoms were not consistent with the evidence in the record. Tr. 80.

In addition to considering the objective evidence in the record, the ALJ examined several other factors. *See* 20 C.F.R. § 404.1529(c)(3). First, the ALJ evaluated Plaintiff's daily activities. *See id.* at § 404.1529(c)(3)(i). The ALJ considered Plaintiff's testimony at the hearing, which states that she could not take care of herself and perform simple maintenance and activities in her daily life. Tr. 79. The ALJ mentioned that Plaintiff spends all day watching television and on the couch. *Id.* Second, the ALJ considered if Plaintiff used or uses a treatment, other than medication, to alleviate

| | |
|---|---|
| MAGALLY MERCADO ACOSTA v.<br>COMMISSIONER OF SOCIAL SECURITY | Page 17 |

her symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(v). The ALJ explained that Plaintiff was instructed to use "hot packs, electrical stimulation, physical therapy and home exercise programs to alleviate her symptoms." Tr. 81. The ALJ also considered therapy notes which revealed moderate progress in the shoulder, elbow, and hands and reduction of muscular spams in the shoulder and cervical area. *Id.* Regarding medication, the ALJ mentioned that record notations disclose poor compliance with the medications. *Id.* The ALJ noted that no treatment source recommended aggressive treatment for Plaintiff's conditions and that the records did not substantiate that Plaintiff had functional limitations regarding these conditions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3)(iv) (stating as a relevant factor to assess symptoms the type, dosage, effectiveness, and side effects of any medication that a claimant takes or has taken to alleviate the pain or other symptoms).

We find that the ALJ appropriately considered Plaintiff's non-severe impairments, including fibromyalgia, at the subsequent steps of the sequential evaluation. Thus, the ALJ did not err in assessing Plaintiff's fibromyalgia diagnosis.

3. *Hypothetical question to the vocational expert*

Regarding this final alleged error, Plaintiff contends that the hypothetical question posed by the ALJ to the vocational expert "presented incomplete or insufficient hypotheticals to the vocational officer." Docket No. 17 at 28. In essence, Plaintiff alleges that limitations more severe than those found by the ALJ should have been proffered in the ALJ's hypotheticals. *See id*. But because we find the ALJ's RFC decision is supported by substantial evidence, and because we find the hypotheticals posed by the ALJ consistent with its RFC determination, we think that the questions were proper.

## IV.   Conclusion

For the reasons explained above, the Commissioner's decision is *affirmed*.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th day of September 2021.

<u>S/SILVIA CARRENO-COLL</u>
UNITED STATES DISTRICT COURT JUDGE